UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

Plaintiff,

v.

BETH LIND, SANDRA HAUTAMAKI, JANE/JOHN DOE,
MICHAEL THRUMER, CAPT. MURASKI, THERESA MURPHY,
AMY SMITH, WELCOME ROSE, BELINDA SCHRUBBE,
MR. LUNDQUIST, MICHAEL MEISNER, TOM GOZINSKE,
MR. TUCKWELL, RONALD BAYEH, CHAPLAIN NURDEEN,
FRANCIS PALIFKARA, ISMEAL OZANNE, JANN JOHNSTON,
WILLIAM POLLARD, ANGELIA GROLL, CHARLES FACKTOR,
CHARLES COLE, STEVEN LIND, AND RICK RAEMISCH.

Defendants.

Case No. **18-cv-189-slc**

paragraphs 122-135
severed from case
14-cv-796-slc
(see pgs. 18-19)

DOC NO
REC'D/FILED

2014 NOV 19   AM 10: 31

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

---

CIVIL RIGHTS COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C.
§1983,1988.

---

The plaintiff, Walter Smith, (pro se), moves this under the
civil rights act pursuant to Titles 42 U.S.C. §§1983,1988, and
2000cc et seg.; under State and Federal law.

## I. PLACE OF PRESENT CONFINEMENT:

Stanley Correctional Institution (SCI), 100 Corrections Drive,
Stanley, WI 54768.

A. Is there a grievance procedure at your prison. **Yes.**

B. Have you filed a grievance concerning the acts relating
to your complaint. **Yes.**

C. If you have used the grievance process:

    i. Describe what you did and the result if any: **I have
filed complaints that were
dismissed at every level,
rejected, or denied review
by defendants.**

    ii. Is the grievance process completed? **Yes.**

D. If you did not use the grievance process, explain why not: **Does not
apply.**

## II. PARTIES:

**PLAINTIFF**

   A. Plaintiff, Walter Smith #186894 (Smith) is currently
      residing at Stanley Correctional Institution, 100
      Corrections Drive, Stanley, WI 54768.

**DEFENDANTS**

   A. Defendant Beth Lind (Lind) was the Food Service Manager
      of the Waupun Correctional Institution, P.O. Box 351,
      Waupun, WI 53963, and is being sued in her individual
      and official capacities.

   B. Defendant Sandra Hautamaki (Hautamaki) is currently
      employed as the Program Director at Waupun Correctional
      (WCI), P.O. Box 351, Waupun, WI 53963, and is being
      sued in her individual and official capacities.

   C. Defendant Jane/John Doe is DOC dietitian who ordered
      who ordered cold and unhealthy bag meals to be served
      to fasting Muslims during month of Ramadan. Said
      dietitian was employed at Department of Corrections
      3099 East Washington Ave. Madison, WI 53707, and
      is being sued in his/her individual and official
      capacities.

   D. Defendant Michael Thurmer (Thurmer) was the Warden of
      the Waupun Correctional Institution (WCI), P.O. Box
      351, Waupun, WI 53963, and is being sued in his
      individual and official capacities.

   E. Defendant Capt. Muraski (Muraski) was the Program
      Security Captain at WCI, P.O. Box 351, Waupun, WI
      53963, and is being sued in his individual and
      official capacities.

   F. Defendant Theresa Murphy (Murphy) is the Inmate
      Complaint Examiner at WCI, P.O. Box 351, Waupun, WI
      53963, and is being sued in her individual and
      official capacities.

   G. Defendant Amy Smith ( A.Smith) was the Corrections
      Complaint Examiner (CCE) at the Department of Corrections
      3099 East Washington Ave. Madison, WI 53707, and is
      being sued in her individual and official capacities.

   H. Defendant Welcome Rose (Rose) is the Corrections Complaint
      Examiner at the Department of Corrections, 3099 East
      Washington Ave. Madison, WI 53707, and is being sued in
      her individual and official capacities.

   I. Defendant Belinda Schrubbe (Schrubbe) is the Health
      Services Unit Supervisor at WCI, P.O. Box 351, Waupun,
      WI 53963, and is being sued in her individual and
      official capacities.

2

J. Defendant MR. Lundquist (Lundquist) DAI Representative for the DOC, 3099 East Washington Ave. Madison, WI 53707, and is being sued in his individual and official capacities.

K. Defendant Michael Meisner (Meisner) was the Reviewing Authorith at WCI, P.O. Box 351, Waupun, WI 53963, during time of the incident, and is being sued in his individual and official capacities.

L. Defendant Tom Gozinske (Gozinske) is the Corrections Complaint Examiner for the DOC, 3099 East Washington Ave. Madison, WI 53707, and is being sued in his individual and official capacities.

M. Defendant Mr.Tuckwell (Tuckwell) is the Food Service Manager at WCI, P.O. Box 351, Waupun, WI 53963, and is being sued in his individual and official capacities.

N. Defendant Ronald Beyah is the chaplain of the Milwaukee Secure Detention Facility, P.O. Box 05911, Milwaukee, WI 53205-0911, and is being sued in his individual and official capacity.

O. Defendant Chaplain Nurdeen (Nurdeen) is the chaplain at the Racine Correctional Institution (RCI), and is being sued in his individual and official capacities.

P. Defendant Francis Paliekara (Paliekara) is the Chaplain of WCI, P.O. Box 351, Waupun WI, 53963, and is being sued in his individual and official capacities.

Q. Defendant Ismeal Ozanne (Ozanne) is the OOS for the DOC, 3099 East Washington Ave., Madison, WI 53707, and is being sued in his individual and official capacities.

R. Defendant Jann Johnson (Johnson) is the Inmate Complaint Examiner at WCI, P.O. Box 351, Waupun, WI 53963, and is being sued in his individual and official capacities.

S. Defendant William Pollard (Pollard) is the Warden of the Waupun Correctional Institution, P.O. Box 351, Waupun, WI. 53963, and is being sued in his individual and official capacities.

T. Defendant Angelia Groll (Groll) is the Inmate Complaint Examiner at WCI, P.O. Box 351, Waupun, WI 53963, and is being sued in her individual and official capacities.

U. Defendant Charles Facktor (Facktor) is the Corrections Complaint Examiner for the DOC, 3099 East Washington Ave., Madison, WI 53707, and is being sued in his individual and official capacities.

3

V. Defendant Charles Cole (Cole) is the representative for the Office of the Secretary of DOC, 3099 East Washington Ave., Madison, WI 53707, and is being sued in his individual and official capacities.

W. Defendant Steven Linn (Linn) was the Reviewing Authority at WCI, P.O. Box 351, Waupun, WI 53963 at time of incident and is being sued in his individual and official capacities.

X. Defendant Rick Raemisch was the Secretary of Department of Corrections, 3099 East. Washington Ave., Madison, WI 53707, is being sued in his individual and official capacities.

### III. PREVIOUS LAWSUITS:

A. Have you begun other lawsuits in state or federal court relating to the same facts involved in this action. **No.**

B. Have you begun other lawsuits in state/federal court relating to your imprisonment. **No.**

C. If your answer is yes to either of the above questions, provide the following information: **Does not apply.**

### IV. JURISDICTION:

A. This action is brought pursuant to 42 U.S.C.§§ 2000 et seq., 42 U.S.C. §§ 1983, and 1988, and the 1st, 8th, and 14th Amendments of the Untied States Constitution. This court has jurisdiction base upon 28 U.S.C. §§ 1331,1343,1338 and §13679(a).

B. The amount in controversy exceeds Ten Thousand ($10,000.00) Dollars.

### V. STATEMENT OF FACTS:

A. **PLAINTIFF WAS SERVED UNHEALTHY COLD BAG MEALS DURING ENTIRE RAMADAN FAST OF 2007.**

1. Plaintiff has been a practicing Sunni Muslim of the Islamic faith for more than 20 years, and his documented religious preference has always been Islam.

2. Plaintiff follows a very concise form of Islam mandating that must fast every year for the month of Ramadan unless he is traveling or with a sickness that may put him upon his death bed.

3. On 6/3/07, plaintiff Smith wrote to defendants Hautamaki, Thurmer, and Capt. Muraski regarding the month of Ramadan

4

that was approaching and the unhealthy cold bag meals that
would be served to fasting Muslims.

4. Smith informed Hautamaki, Thurmer, and Capt. Muraski that
   while at G.B.C.I from 1997 to 2006 he had been served the
   cold bag meals and consuming them resulted in severe
   stomach cramps, constipation followed by extreme diarrhea,
   bloody stools, intestine burning, vomiting, weightloss,
   fatigue, dizzy spells, and headaches.

5. Smith also informed Hautamaki, Thurmer, and Capt. Muraski
   that Dr. Wong and Dr. Hiedorn, who worked at G.B.C.I,
   ordered that Smith not be served these unhealthy and cold
   bag meals because of the serious medical problems caused
   by them. Smith also stated milk severely cramps his
   intestine causing diarrhea, so could he have a substitute.

6. Smith informed Hautamaki, Thurmer, and Capt. Muraski that
   he was infected on 3 separate occasions with H-Phylori from
   consuming the unhealthy bag meals and had to be treated with
   antibiotics. Smith also informed these defendants that he had
   been given several medicines such as: omeprazole, maalox,
   cimetidine, pepto-bismath, tetracycline, metamucil, patap-
   iezola, simethicone tablets, belladonna, aluminum hydrotide
   antacid liquid, prilosec, amoxicillin, clarithromycin,
   metronidayale, bismall subsaliylate, ranitidine (zantac)
   , and mineral oil docusate, as a result of the severe pain
   and inflictions caused by the unhealthy cold bag meals.
   Smith informed the defendants that his medical record could
   be reviewed to confirm.

7. Plaintiff Smith stated in the letter that the severe pain and
   other symptom would last for 6-7 months after Ramadan is over,
   then his digestive system turns to normal, only to be exposed
   to the same conditions (from cold and unhealthy meals), when
   Ramadan returns. Smith pleaded with the defendants to provide
   him warm and healthy meals because Ramadan is the most
   blessed month of a Muslims life and is a incredible reward
   for Muslims who complete the fast.

8. Smith did not receive a response from either Hautamaki,
   Thurmer, or Muraski, thus, the above defendants willingly,
   knowingly, and intentionally violated plaintiff's consti-
   tutional rights showing callous disregard for Smith's
   health and safety.

9. On 9/13/07 through 10/12/07, Smith was served cold bag meals
   consisting of food for dinner and breakfast. None of the
   food was heated, and would nearly be frozen. These bag meals
   are prepared and stored in a cooler for 24-26 hours then
   given directly to Smith to consume.

10. The condition of the food was very poor. Smith was often
    given less food then the menu stated, the bread was old, hard
    and molded, and the bag meals were not equal in nutrition,

5

calories, or warm temperature as inmates not fasting.

11. Smith immediately begun having terrible abdomen pains, cramps, burning, headaches, diarrhea, bloody stools, weight loss, and nausea from the bag meals and contacted HSU, Smith had similar problems from the previous years Ramadan cold and unhealthy bag meals.

12. Smith was provided medicine by the nurse to get his digestive system working because his stools were bloody and painful. Smith was later seen by the prison doctor who prescribed several medicines to help with Smith's digestive system and lesson the pain. Smith continued to suffer these stomach and intestine pain for 6-7 months before his digestive system turn back to normal.

13. Plaintiff Smith and six other Muslim inmates who were fasting filed an inmate complaint regarding the unhealthy cold bag meals and the pain and suffering they were enduring as a result. (WCI-2007-29446). Defendant Kroll orderd Smith to contact Food Service Administrator Lind.

14. Smith contacted defendant Lind on 9/29/07, informing her of the conditions of the bag meals and pain and suffering fasting Muslims were having as a result. Lind responded on 10/1/07 stating that the bag meals had no problems, will continue, and the Food Service Manual states that food is required to provide two bag meals, neither of which requires a hot meal.

15. Smith refiled his inmate complaint (IC) on 10/2/07, raising the same issue with unhealthy cold bag meals. Defendant Murphy dismissed the complaint without investigating the IC, and instead concluding that there's no requirement to serve hot meals, and Smith should direct his medical issues to HSU.

16. Defendants Thurmer, Rose, A. Smith, and Raemisch agreed with dismissal of Smith's IC despite Smith showing the danger posed by the unhealthy cold bag meals and severe pain he suffered as a result. Defendants Murphy, Lind, Thurmer, Rose A. Smith, and Raemisch willingly, knowingly, and intentionally, failed to intervene, acted with reckless and callous disregard for plaintiff's constitutional rights by condoning, approving, and turning a blind eye to the practice of serving plaintiff unhealthy cold bag meals.

B. PLAINTIFF WAS SERVED UNHEALTHY COLD BAG MEALS DURING ENTIRE RAMADAN FAST OF 2008.

17. On 6/28/08, plaintiff sent a correspondence to defendants Hautamaki, Capt. Muraski, and Thurmer stating he had a history of cramps, diarrhea, bloody stools, intestine burning, weight loss, vomiting, nausea, infections, fatigue,

and headaches from being served the unhealthy Ramadan bags. Plaintiff Smith informed Hautamaki, Muraski, and Thurmer that two doctors and several nurses have documented he shouldn't be served the unhealthy cold bag meals during Ramadan.

18. Plaintiff also informed the defendants that he endures these stomach and intestine problems for 6-7 months before his digestive system returns to normal. Plaintiff pleaded with the defendants to prepare nutritional, caloric, and warm foods for his fast and suggested ways this could be achieved without additional cost or time spent by the administration.

19. Plaintiff did not receive a response from either Hautamaki, Thurmer, or Muraski, therefore, defendants willingly, knowingly, and intentionally allowed a policy to remain in place violating plaintiff's constitutional rights showing callous disregard for plaintiffs health.

20. On 9/2/08 through 10/2/08, plaintiff Smith was served the unhealthy cold bag meals with food cold/frozen and no way to heat food. Further, bag meals were far less in calories served non-fasting inmates.

21. Plaintiff immediately begun to have severe cramping, burning in intestine, bloody and painful stools, fatigue, nausea, headaches, and weight loss from the unhealthy bag meals.

22. On 10/12/08, plaintiff and other fasting Muslims filed a joint complaint about the unhealthy cold and unutritional bag meals given to them. (WCI-2008-27407). Defendant Kroll arbitrarily returned the complaint to plaintiff on the grounds that the complaint contained multiple issues, medical and meals.

23. Plaintiff removed the one sentence line referring to the medical attention sought from consuming the bag meals and placed the IC in the ICE mailbox on the same day plaintiff received it.

24. Defendant Murphy arbitrarily rejected plaintiffs refiled IC and defendant Thurmer agreed with the rejection. defendants Kroll, Murphy, and Thurmer willingly, knowingly, and intentionally violated plaintiffs constitutional rights showing callous disregard for plaintiff's health.

25. On 10/16/08 plaintiff submitted a Health Services Request (HSR) to HSU for medical treatment for the severe pain and intestine problems. Smith again was treated by the nurse and given several medicines to assist his digestive system, placed on a bland diet and scheduled to see the doctor.

26. Plaintiff was given additional medicine for 6-7 months to assist with the severe stomach and intestine problems he had, and was told by HSU staff that the bag meal diet is unhealthy and caused plaintiff's stomach conditions. Plaintiff stomach

and intestine condition continued for 6-7 months.

27. Smith filed another IC after being treated by the nurse regarding the damage to his intestine caused by the cold bag meals. Smith informed defendants Kroll, Murphy, and Schrubbe of his problems with the bag meals and HSU's conclusion that the bag meals lacked nutritional value, were hard to digest, and Smith was removed from the Halal diet (vegan) tray for the same reasons.

28. Defendants Murphy and Meisner dismissed Smith's IC stating that if Ramadan bags causes medical issues Smith should not fast. Defendants Gozinske, A. Smith, and Raemisch never addressed Smith's IC rather, arbitrarily dismissed Smith's IC on improper grounds.

29. Defendants Murphy, Schrubbe, Meisner, A.Smith, Gozinski, and Raemisch willingly, knowingly, and intentionally showed disregard for plaintiff Smith's safety by continuing, condoning, and not intervening to end a policy that violated Smith's constitutional rights.

## C. PLAINTIFF WAS DENIED HALAL AND TRADITIONAL FOODS FOR EID-UL- FITR.

30. On 8/27/08, Plaintiff Smith and other Muslim inmates wrote defendants Hautamaki, Paliekara, and Thurmer making a request to have traditional foods such as halal lamb and dates eaten by the Prophet Muhammad (SAWS) served at the Eid-ul-Fitr (feast after Ramadan fast).

31. Plaintiff explained to defendants Hautamaki, Paliekara, and Thurmer that it is a great blessing in Islam to practice the actions, traditions, and sayings of the Prophet Muhammad (Sunna).

32. Defendants Hautamaki, Paliekara, and Thurmer denied the request even though Muslim inmates volunteered to pay for feast and dates would be donated by volunteer. The defendants willingly, knowingly, and intentionally violated plaintiffs constitutional rights

33. On 10/2/08, plaintiff Smith was served a vegan dinner for Eid-ul-Fitr. Plaintiff thought the defendants might serve a meal that was excepting of Islamic practice, although not what was requested. Instead, defendants served a diet of Buddhist and Hindu faiths, and it is haram (not permissible) to innovate such practices as Islamic.

34. Plaintiff Smith and other Muslim inmates filed a joint IC regarding not being served a feast meal that was festive under Islamic tradition. (WCI-2008-27231).

8

35. Defendant Murphy again improperly rejected plaintiff's IC and defendant Thurmer agreed with rejection, willingly, knowingly, intentionally condoning or not intervening with a practice and policy that violated plaintiff's constitutional rights.

36. Defendants allowed Christmas, New Years, Easter, and Thanksgiving to be festive under Christian tradition, change the menu to observe Catholic Lent season tradition, allowed festive items to be donated for Jewish inmates during Hanukkah with kosher diets, and provided a vegan diet for other religious groups for their festive traditions.

### D. HALAL DIET IS NOT NUTRITIONAL OR WHOLESOME.

37. WCI begun serving a vegan diet (plant base) with a Halal pattie (soy) being served 4 times per week.

38. The vegan tray begun being serve to plaintiff Smith in June-July of 2008. Smith begun having complications from the vegan meal feeling fatigue, headaches, constipation and intestine pressure that was a continuous pain in Smith's lower abdomen area. Smith also begun having muscle and joint pain.

39. Once Ramadan begun on 9/2/08, Smith's stomach and intestine problems increased where Smith was being served a vegan/Ramadan bag meal. Smith started having bloody stools, vomiting, nausea, and convulsions in

40. Smith requested medical assistance and was seen by the nurse on October 22, 2008. The nurse, after evaluating Smith's stomach and intestine area, concluded that the Halal/Vegan diet Smith was served during Ramadan and as a regular diet was causing the symptoms Smith was having, and informed Smith that she is removing him from the Halal diet immediately.

41. Smith objected to being removed from the Halal diet explaining to the nurse that he was religiously required to eat only Halal meat and the vegan/Halal diet was the only option.

42. The nurse informed Smith that the vegan diet served by WCI lacks certain nutritional properties, people who are vegans use supplements for the vitamins or proteins the diet lacks, and the diet is very difficult to digest. The nurse informed Smith he would only get worst if he stays on the diet, and she has no choice but to remove him from the diet and place Smith on a bland diet until his stomach and intestine recovered.

43. On 10/23/08, Smith was removed from the Halal/Vegan diet and placed on a bland diet per order of HSU.

**44** Smith filed a IC on 10/2/08, requesting that the Halal/Vegan diet be modified to make the meal nutritional and easy to digest.   WCI-2008-28873)

**45.** Defendant Murphy recommended Smith's complaint be dismissed on the grounds that no administrative or RLUIPA rule requires meat to be served at all, the Halal diet meets the nutritional standards set forth in the DOC Diet Manual, and the administrative requirement of Wis. Admin. Code 309.61(7)(b) that "to the extent feasible, institution shall plan meals so that an inmate may maintain a inmate's religion " was met.

**46.** Murphy also stated participating in the approved Halal diet does not place a substantial burden on religious adherents to forego their religious precepts. Murphy then suggested Smith choose a vegan meal or self-select (eat no meat at all).

**47.** Defendant Meisner agreed with Murphy's recommendation and dismissed Smith's IC. Defendant Gozinske recommended dismissal of the IC stating the DOC dietician reviewed the Halal diet and determined it to be nutritionally appropriate. Defendants A. Smith and Reamisch accepted the recommendation to dismiss plaintiff's IC.

**48.** Defendants Murphy, Meisner, Gozinske, A. Smith, and Reamisch willingly, knowingly, and intentionally disregarded Smith's constitutional rights, condoning and failing to intervene in a policy and practice that disregarded plaintiff's health.

## E. HALAL DIET IS CONTRARY TO ISLAM.

**49.** Plaintiff Smith became aware that the Halal diet was infact a Buddhist/Hindu vegan (plant base) diet which forbids any food that is not plant base. Therefore, the vegan diet forbids several foods such as eggs and anything made with dairy products which is permissible in Islam.

**50.** It is plaintiff Smith's sincerely held belief that it is Haram (not permissible) and shirk (to worship other than ALLAHU و عز and removes ones faith) to make unlawful what ALLAHU و عز has made lawful.

**51.** The Vegan/Halal diet makes a lot of food items unlawful that are permissible in Islam therefore, it is Haram and Shirk to adhere to such a diet. By participating in such a diet Smith would be committing what is forbidden and removal of his faith, by excepting the practice as a Islamic Halal diet, which would be an innovation (adding a practice to Islam that is not Islamic law).

52. Plaintiff Smith believes that limiting him to a beef/
soy pattie 4 times a week is also an innovation in
Islam because it is lawful to eat meat at anytime in
Islam. The Halal/vegan diet limits meat to four times
a week to just a beef/soy pattie.

53. On 8/13/08, Smith filed a Request For New Religious
Practice form requesting that the Halal diet be
modified to exclude the vegan portion and limiting
him to a meat pattie four times a week. Smith explain
how this practice violated serious Islamic requirements.

54. Smith provided the defendant with a method to serve
a sufficient Halal diet that would not cost additional
staff. Smith proposed serving fasting Muslims with
regular food, other than the meat portion, and
substitute the meat portion with Halal meat.

55. Defendant Paliekara agreed with Smith that the vegan
diet forbidding certain foods constituted shirk and
was not permissible in Islam to make unlawful what
ALLAHU أللّٰه (most high) has made lawful.

56. Defendants Paliekara, Beyah, and Nurdeen disagreed
that limitng Muslims to 4 Halal beef/soy patties a day
does not make what Islam has made lawful by ALLAHU أللّٰه
(most high).

57. On 11/4/08, defendants Hauatamaki, Lundquist, and
Thurmer denied plaintiff Smith's request to modify the
Halal diet although defendant Paliekara agreed with
Smith's request to modify the Halal/vegan diet.
Defendant's Hauatamaki, Lundquist and Thurmer willingly,
knowingly, intentionally disregarded Smith's
constitutional rights by condoning and failing to
intervene or change a policy that causes disbelief in
Smith's religion.

58. Smith filed an IC regarding the Halal/vegan diet
forbidding foods Islam declares lawful, and defendants
Hautamaki, Lundquist, and Thurmer's denial of
modification of the diet. Defendant Murphy recommended
Smith's IC be dismissed because defendants Hauatamaki,
Lundquist, and Thurmer denied it. Murphy conducted no
investigation of the facts and never researched the
seriousness of the Islamic violation the Halal/vegan
diet causes.

59. Defendant Gozinske, A. Smith, and Raemisch dismissed
or agreed with dismissing Smith's IC based upon Murphy's
recommendation. All defendants willingly, knowingly,
and intentionally condoned violation of Smith's
constitutional rights and failed to order changing of
a practice that removes Smith from his religion.

F. **PLAINTIFF WAS SERVED UNHEALTHY COLD BAG MEALS DURING ENTIRE MONTHLY RAMADAN FAST OF 2009.**

60. On 7/8/09, plaintiff Smith sent a correspondence to defendants Thurmer and Hautamaki regarding fasting Mulsims being served unhealthy cold bag meals for the month long Ramadan fast.

61. Smith informed the defendants Hautamaki and Thurmer about his complications with stomach and intestine problems consuming the unhealthy cold bag meals during Ramadan, including the previous two years.

62. Smith informed Hautamaki and Thurmer that he has had a history of cramps, diarrhea, bloody stools, intestine burning, weight loss, vomiting, nausea, infections, fatigue, and headaches from being served the unhealthy Ramadan bags. Plaintiff informed Hautamaki and Thurmer that health services has documented that he shouldn't be served the unhealthy cold bag meals during Ramadan.

63. Plaintiff also informed the defendants that he endures these stomach and intestine problems for 6-7 months before his digestive system returns to normal. Plaintiff requested warm and healthy meals during Ramadan, and suggested methods that could achieve the request without additional staff or time for staff.

64. Plaintiff did not receive any response from defendants Hautamaki or Thurmer, and the defendants knowingly, willingly, and intentionally allowed a practice to continue that violated plaintiff's constitutional rights showing disregard for plaintiffs health.

65. Smith sent a correspondence to defendant Scrhubbe explaining that he contacted her last year and she directed Smith to contact her when the next years Ramadan starts.

66. Smith informed Schrubbe of the medical problems he has endured due to the cold unhealthy bag meals, and that Doctors at Greenbey Correctional ordered that he be served warm meals during Ramadan.

67. Smith also informed Schrubbe that the problems of severe stomach cramps, bloody stools, diarrhea, constipation, intestine infections, and intestine burning continue for several months after Ramadan is over, and he has to be treated with several medications.

68. Smith also informed Schrubbe that Ramadan was a very important practice in Islam, and gave suggestions on how warm meals could be provided

12

without any additional staff or resources.

69. On 8/22/09 through 9/20/09, plaintiff was served
the unhealthy cold bag meals with food being cold
/frozen with no way to heat the food. Further, the
bag meals were far less in calories and nutrition
than meals served to non-fasting inmates.

70. Smith immediately begun to have severe stomach cramps,
intestine burning, painful and bloody stools,
constipation followed by diarrhea, vomiting, nausea,
weight loss, and intestine pain so bad that Smith
had to lie down until the pain subsided.

71. on 9/2/09 Smith filed an inmate complaint (WCI-2009-
22173) about the stomach and intestine problems he
was having due to unhealthy cold Ramadan bag meals.

72. On 9/10/09 defendant Kroll returned Smith's complaint
stating he needed to attempt to resolve the issue
first with the Food Service Administrator defendant
Tuckwell.

73. On 9/15/09 Smith wrote to the WCI Food Service Manager
Tuckwell informing him of the severe stomach aches,
cramps, diarrhea, constipation, painful stools, and
vomiting he was experiencing from cold Ramadan bag
meals.

74. Smith explained to Tuckwell that fasting Muslims were
experiencing fatigue, nausea, weightloss, Muscle
aches and headaches as a result of being served the
cold Ramadan bags.

75. Smith also stated that feeding fasting Muslims
potato chips, cookies pastries, bologna & cheese and
adding carrots, celery, radish, boiled eges and
bread doesn't make the diet healthy or USDA approved.

76. Tuckwell responded stating the meals made for the
Ramadan fast were in accordance with DAI and DOC
policy.

77. Smith resubmitted his complaint (WCI-2009-22173)
on 9/30/09, and on 10/2/09, defendant Kroll again
returned Smith's complaint stating it contained
more than one issue.

78. On 10/2/09 Smith wrote to Kroll asserting his complaint
contained a single issue about the unhealthy cold
Ramadan bags, and requested that his complaint be
processed.

79. On 10/5/09 Smith's complaint was accepted and
defendant Murphy rejected Smith's complaint on the

the grounds that it was previously addressed in
2007. Defendant Murphy agreed with the rejection of
Smith's complaint on 10/16/09.

80. Defendants Kroll, Murphy, and Meisner willingly,
knowingly, and intentionally failed to intervene
acted with reckless and callous disregard for
plaintiff's constitutional rights by condoning,
approving, and turning a blind eye to the practice
of serving plaintiff unhealthy cold bag meals.

81. On 9/18/09 other inmates and plaintiff filed a joint
complaint stating that the cold bag meals contained
less calories and nutrition than inmates who are not
fasting.

82. The joint complaint stated fasting Muslims were
experiencing fatigue, weight loss, nausea, dizzy
spells and muscle aches. (WCI-2009-21141).

83. Defendant Murphy arbitrarily rejected the complaint
without any investigation. Defendant Meisner agreed
with the rejection on 10/6/09.

84. Defendants Murphy and Meisner again willingly,
knowingly, and intentionally failed to intervene,
acted with reckless and callous disregard for
plaintiff's constitutional rights by condoning,
approving, and turning a blind eye to the practice
of serving plaintiff unnutritional and unhealthy
bag meals.

85. On 9/4/09, 9/15/09, and 11/25/09 Smith Submitted
Health Services Requests to the Health Services Unit
(HSU) for medical treatment for the severe pain and
intestine problems. Smith was provided several
medications to assist his digestive system and
the pain caused by the cold bag meals.

86. Smith was provided additional medications for 6-7
months to assist with the severe stomach and
intestine problems caused by the unhealthy cold
Ramadan bag meals.

G. **PLAINTIFF WAS DENIED HALAL AND TRADITIONAL FOODS FOR
FOR EID-UL-FITR IN 2009.**

87. In July of 2009, Smith wrote to defendant Thurmer
requesting that Halal (meat meeting Islamic dietary
requirements) and traditional foods be served at
Eid-Ul-Fitr (Islamic Feast). Thurmer directed Smith
to contact food service manager defendant Tuckwell.

88. On September 16, 2009, Smith wrote defendant Tuckwell
requesting that Halal and traditional festive foods

be served during the Eid-Ul-Fitr feast. Smith explained to Tuckwell that Muslims wanted to celebrate the Eid as the Prophet Muhammad which is a great blessing in Islam.

90. On September 23, a week later, Tuckwell denied Smith's request stating that per DAI and DOC policy no special foods will be used in the feast, a regular meal will be served as requested by the chaplain (Paliekara) and Program Director (Hautamaki).

91. On October 2, 2009, Smith was served the leftover food from the dinner meal with no Halal meat or traditional Islamic foods violating Islamic custom and dietary laws.

92. On October 4, 2 days later, Smith filed an IC (WCI-2009-23171) for not being allowed to have a Eid-Ul-Fitr with traditional foods, and challenging the ban on Halal and traditional Islamic foods being served per defendants Ronald Beyah and Nudeen. Defendant Kroll returned the IC for Plaintiff to contact Tuckwell, which he had already done.

93. On 10/12/09, Plaintiff refiled his complaint, defendant Murphy recommended dismissal of the IC where DAI/DOC policy was followed, defendants Meisner dismissed the IC, and defendants Gozinske and Ozanne agreed. All defendants willingly, knowingly and intentionally implemented or operated a policy in a way that denied plaintiff's right to freely practice his religion by substantially burdening plaintiff's right to fast and celebrate Eid-Ul-Fitr according to Islamic jurisprudence, with no penological interest to do so.

## H. PLAINTIFF WAS FORCED TO VIOLATE RELIGIOUS BELIEFS BY BEING MISINFORMED TO FAST ON EID-UL-FITR DAY AND DENIED EID-UL-FITR ON THE CORRECT DAY AS RELIGIOUSLY REQUIRED.

94. In August of 2009, before Ramadan begun, Smith approached defendant Paliekara informing him that his projected day of holding Eid-Ul-Fitr on 10/23/09 was incorrect because Ramadan ends on 9/19/09, therefore, the Eid-Ul-Fitr must be held within 3 days, and for Muslims to fast on 9/20/09, (Eid day) was prohibited in Islam.

95. Muslim volunteer Syid Molz corroborated Smith's contention to Paliekara in August of 2009.

96. Paliekara stated he would inform Hautamaki of the problem and see what could be done.

97. Paliekara and Hautamaki held the Eid on 9/23/09, the wrong day, plaintiff could not perform Eid prayer, sermon, group dhirk (praises) or the feast.

98. Defendant Nurdeen attempted to perform an Eid prayer when other Muslims and plaintiff objected because the Eid-Ul-Fitr ended the day before. Nurdeen agreed and held open discussion on Islam instead.

99. Plaintiff filed an IC on 10/4/09, regarding Muslims being directed to fast on Eid day and having Eid-Ul-Fitr on the wrong day.

100. Defendant Kroll returned plaintiff's complaint two days later directing plaintiff to attempt to resolve the matter with defendant Paliekara.

101. On 10/12/09, Plaintiff contacted Paliekara for an explanation as to why Muslims were directed to fast on September 20, the first day of the Eid, and why the Eid-Ul-Fitr was held on the wrong day.

102. On 11/3/09 Paliekara responded acknowledging that Muslims were direct to fast on September 20, 2009, and September 20 was the first day of Eid-Ul-Fitr. However, Paliekara provided no reason for the violation of the Ramadan fast and Eid-Ul-Fitr.

103. On 11/10/09, Plaintiff refiled his complaint regarding the wrong fast and Eid days. Defendants Murphy and Meisner, after reviewing correspondences from Palieraka and Hautamaki arbitrarily concluded that Ramadan ended on September 20, 2009, not September 19, 2009, no administrative rules were violated therefore plaintiff's IC should be dismissed.

104. Defendant Ozanne and Rose agreed with dismissal of plaintiff's IC concluding that the start and end of Ramadan are debated between people of Islamic faith, Nurdeen performed a sermon, dhirk, a feast was held within 3 days.

105. Defendants Paliekara, Hautamaki, Kroll, Murphy, Meisner, Ozanne, and Rose willingly, knowingly, and intentionally condoned, approved, and turning a blind eye to the violation of plaintiff's constitutional right to practice his religion.

106. The defendants's actions directly condoned a practice that denied plaintiff's constitutional right to freely practice his religion and substantially burdening plaintiff's religion by preventing the celebration of the fast of Ramadan, failing to claim any penological interest for doing so.

## I. DIVISION OF ADULT INSTITUTION AND WCI POLICY DENIED PLAINTIFF JUMU'AH SERVICES, TA'ALIM OR TO DISCUSS ISLAM IN A GROUP SETTING.

107. On 9/28/09 plaintiff filed a complaint (WCI-2009-22169) regarding DAI policy 309.61 Religious Services and Study Group and Waupun Correctional Institution (WCI) policy that denied Muslim inmates the right to have Jumu'ah services, Ta'alim, teach or have group discussion on Islam anywhere at WCI.

108. Plaintiff stated in the complaint that Jumu'ah had been canceled several times, due to no volunteer being available, there had not been a single Ta'alim (study group) in years, and Muslims were not allowed to teach, learn, or discuss Islam in a group setting anywhere at WCI.

109. Plaintiff state in his IC that the Qur'an mandates that Muslims learn and teach Islam as well as lead the group prayer.

110. On 10/2/09 Kroll returned Smith's Kroll returned Smith's complaint directing plaintiff to contact the program director Hautamaki.

111. On that same day plaintiff responded to Kroll's directive informing her that in exhausting his administrative remedies DOC code did not require him to contact Hautamaki, and doing so could not resolve the matter because Hautamaki can't change DAI or WCI policy.

112. A week later, on 10/5/09, Murphy retaliated against plaintiff by recommending dismissal of his complaint for not contacting Hautamaki. Defendants Thurmer, Gozinski, and Ozanne agreed with dismissal of the complaint without conducting any investigation into plaintiff's complaint.

113. Plaintiff continued to have Jumu'ah canceled for months at a time, no Ta'alim, and a ban on learning, teaching or discussing Islam in a group setting anywhere within WCI until 2012 when plaintiff left.

114. On several occasions at WCI plaintiff and other Muslims inmates would be ordered to brake up discussions about Islam at recreation, chapel, or anywhere inmates could gather.

115. DAI policy 309.61 and WCI policy prevented plaintiff from practicing Islam as required from 2007-2012.

116. Plaintiff asserts that all defendants failed to protect plaintiff's right of freedom to practice his religion, knowingly, and intentionally condoning, approving, and turning a blind eye to the arbitrary practice of DAI and WCI policy preventing plaintiff from participating in Jumu'ah services, Ta'alim, or any group discussion on Islam.

17

117. Plaintiff asserts that prior to the implementation of DOC DAI 309.61 policy and WCI policy, inmate Muslims were allowed to conduct the Khutbah (sermon) and Jumu'ah prayer under the supervision of the chaplain or correctional officer.

118. Plaintiff asserts that WCI implemented and operate policies allowing inmates to teach and tutor in vocational courses, academic classes, arts, music, recreational teams, heavy machinery, culinary arts, and treatment programs.

119. Plaintiff asserts that WCI allow other faiths to operate inmate Bible studies, choirs, and testification while prohibiting Muslim inmates from teaching each other the fundamental requisites and customary practices of Islam.

120. Defendants Kroll, Murphy, Thurmer, Gozinske, and Ozanne were provided information in the IC of plaintiff's belief that his right to free religious exercise was burdened when he was repeatedly denied Jumu'ah prayer, Ta'alim, or to learn or teach Islam anywhere at WCI, See ¶107-116, choosing arbitrarily to dismiss the IC (WCI-2009-22169).

121. The defendants actions/inaction, see ¶107-116, plaintiff's freedom to practice his religion has been substantially burdened by being deprived of the rewards and blessings that Muslims receive for fulfilling their mandatory duties of Jumu'ah prayer and Ta'alim with co-believers, from 2008-2012.

## J. PLAINTIFF WAS PROVIDED CONTAMINATED WATER AT WCI.

122. Plaintiff asserts that in Novmeber of 2008, while being housed at WCI, he noticed the water coming from the cell sink had a brown or yellow tint to it, had a salty/tangy taste, and smelled like rotten eggs.

123. Whenever plaintiff would drink the water from the sink in the cell, he would experience diarrhea, nausea, stomach aches, and hives.

124. Plaintiff begin to notice that prison staff, correctional officers, and inmates were not drinking the water in the cell halls.

125. In September of 2009, plaintiff observed plumbers and construction workers removing water pipes from the cell hall and inquired why the pipes were being removed.

126. The plumbers informed plaintiff that the water pipes were corroded and contaminates water making people sick.

127. On 9/30/09, Smith filed an IC (WCI-2010-1610) stating the water was brown or yellow in color with little

128. black particles, smelled like rotten eggs, tasted salty/tangy like chlorine, and the drains were filled with a black oily substance.

129. Plaintiff also stated in the IC that drinking the water from the cell sink caused diarrhea, nausea, stomach aches, and hives.

130. On 10/16/09, defendant Kroll instructed plaintiff to contact Charles Clover, Superintendent of Building and Grounds.

131. Plaintiff wrote to Clover explaining the problems with the water and received no response.

132. On 1/14/09, Plaintiff refiled his complaint informing defendant Kroll that Clover never responded to his inquiry.

132. On 1/25/09, defendant Murphy recommended the IC be dismissed after contacting Clover who stated that the water at WCI was safe.

133. Defendant Meisner dismissed plaintiff's IC, and Gozinske and Ozanne agreed with dismissal of plaintiff's IC.

134. All defendants, although plaintiff informed them of the hazardous conditions and sickness caused by the water, willingly, knowingly, and intentionally failed to intervene, or turned a blind eye to plaintiff's serious risk of harm.

135.
    Defendants Kroll, Murphy, and Meisner knew, or should have known of the serious risk of harm to plaintiff, willingly blind to such serious risk, and from 2008 to 2012, failed to take steps to address such known risks.

## K. PLAINTIFF WAS SERVED UNHEALTHY COLD BAG MEALS DURING ENTIRE MONTHLY RAMADAN FAST OF 2010.

136. On 6/5/10, plaintiff wrote to defendants Hautamaki, Tuckwell, and the Warden (Meisner) regarding being served unhealthy cold bag meals for the month long fast.

137. Plaintiff informed the defendants that several years he has had to suffer vomiting, cramps, diarrhea, bloody stools, intestine burning, weightloss, nausea, infectious, fatigue, and headaches from consuming those cold bag meals.

138. Plaintiff explain to defendants that the bags were prepared a day in advance and placed in a cooler until the next day when they are handed out to

fasting Muslims.

139. Plaintiff also informed the defendants that he has
to take several medications to help his stomach and
intestine pain for 6-7 months, the pain never goes
away for the entire 6-7 month period, and his
medical chart demonstrates these facts.

140. The plaintiff informed defendants that the bag meals
are not nutritious, have far less calories than
normal meals, he can't drink milk but is never given
a substitute, and the bag meals he's never allowed
to heat up.

141. Plaintiff explain to defendants that it is absol-
utely required for him to fast during Ramadan and
suggested ways the meals could be heated and
delivered without no additional resources or staff.
Plaintiff received no response from defendants.

142. Plaintiff was served the unhealthy cold bag meals
for the entire month of the 2010, Ramadan suffering
severe pain from vomiting, cramps, diarrhea, bloody
stools, constipation, intestine burning, fatigue
dizzy spells, and weight loss of nearly 25 pounds.

143. Plaintiff's pain was so excruciating that he could
not attend institutional functions remaining mostly
in his cell.

144. On 8/22/10, plaintiff submitted a Health Services
Request form seeking medical assistance for the
painful condition caused by consuming the cold bag
meals.

145. Plaintiff was prescribed several medications to help
with his digestive system and the severe pain caused
by the unhealthy cold bag meals.

146. Plaintiff was provided additional medications for
6-7 months to assist the severe stomach and intestine
problems that ensued as a result of the unhealthy
cold bag meals.

147. On 8/22/10, plaintiff submitted an IC (WCI-2010-17684)
about the Ramadan bag meals being served cold,
unhealthy, and lacked sufficient calories and
nutrition.

148. Plaintiff stated that the cold bag meals caused
stomach cramps, burning in his intestine, sharp
pains, bloody stools, diarrhea, constipation, nausea
vomiting, and suggested ways the bag meals could be
warmed up to eat. (WCI-2010-17684).

149. Defendant Johnston rejected plaintiff's complaint
     stating it was previously raised in 2007. Defendant
     Meisner argeed with the rejection, and neither
     defendant investigated, inquired or considered
     plaintiff's condition.

150. On 8/22/10 plaintiff filed a second complaint (WCI-
     2010-17935). stating the Ramadan bag meals contained
     for less calories, were not nutritional or wholesome,
     and he suffered fatigued, nausea, dizzy spells, muscle
     aches, and lost 18 lbs in 12 days.

151. Defendant Johnston recommended plaintiff's IC be
     dismissed where defendant Tuckwell informed her that
     the Ramadan fast bag calories fall in the guidelines
     of 2200 calories, plus or minus 100 calories.
     defendant Meisner agreed and dismissed plaintiff's IC.

152. Plaintiff, while appealing Johnston's and Meisner'
     decision, stated that he personally added up the
     calories of the contents of the Ramadan bag that he
     was served by using the Food Service Manual and
     Tuckwell's assertions were wrong.

153. Defendant Rose recommended and Lunquist dismissed
     plaintiff's IC stating plaintiff was not served 600
     less calories.

154. All defendants were made aware of the serious medical
     condition the Ramadan bags caused plaintiff. See
     ¶136-152, yet none of them stop the cold bag meal
     practice, contacted WCI Health Services to confirm
     plaintiff's pass and current pain caused by the cold
     bag meals, and willfully, knowingly, and intentionally
     showed disregard for plaintiff's safety by continuing,
     condoning, and not intervening to end a policy that
     violated plaintiff's constitutional rights.

155. Defendants Hautamaki and Tuckwell were made aware of
     the history of the serious medical condition the
     cold bag meals caused plaintiff before Ramadan
     begun, See ¶136-142, therefore, by their actions
     showed callous disregard for plaintiff's safety
     by continuing, condoning, and not intervening to
     end a policy that violated plaintiff's constitutional
     rights.

L. **PLAINTIFF WAS SERVED UNHEALTHY COLD BAG MEALS DURING
   ENTIRE MONTHLY RAMADAN FAST OF 2011.**

156. On 7/8/11 and 7/9/11, plaintiff wrote to defendants
     Schrubb and Tuckwell regarding being served warm
     meals during the Ramadan fast.

21

157. Plaintiff stated that every year he has to suffer severe pain such as: intestine burning, diarrhea, constipation, painful bloody stools, vomiting, stomach cramping, and suffers severe stomach and intestine pain for 7-8 months.

158. Plaintiff stated to Schrubb that pass doctors ordered that he be served warm meals and the doctor at WCI stated he could order it but security would not allow it.

159. Plaintiff also stated the pain he experienced is severe causing him to bleed so much from his anus that he has to change his underwear.

160. Plaintiff stated to Schrubb that fasting was obliga- tory for him, Islamic jurisprudence does not allow him to skip the fast, and he couldn't be forced to give up the most blessed 30 days of a Muslims life because WCI staff does not want to give him a warm meal.

161. Plaintiff further stated that he could not consume the milk and cereal because it makes his stomach and intestine hurt pain unbearable and requested a substitute. Plaintiff informed Scrubb that his medical records would confirm what he stated.

162. Plaintiff also state to Schrubb that he (plaintiff) could not skip the fast as defendant Francis had previously stated, it was not the fast that causes the pain but the cold unhealthy bag meals.

163. Plaintiff also suggested to Schrubb and Tuckwell how the meals could be warmed up without additional cost or staff.

164. Defendant Tuckwell did not respond to plaintiff correspondence.

165. Defendants Schrubb and Tuckwell knowingly, willingly, and intentionally allowed a practice to continue that violated plaintiff's constitutional rights showing disregard for plaintiff's health and safety.

166. On 8/10/11, plaintiff filed an IC (WCI-2011-18197) informing the complaint examiner that he was suffering intestine and stomach cramps, vomiting, constipation, diarrhea, painful bloody stools, and severe pressure in his stomach, begging to be given warm meals.

167. Defendant Johnston rejected plaintiff's IC on the grounds that the issue had been addressed in a 2007 IC, and she asserted that the food service manual requires only two bag meals, neither of which requires a hot meal. Johnston also stated plaintiff could skip the fast.

22

168. Plaintiff appealed Johnston's rejection stating that his current IC was based on the pain and suffering he was enduring during the 2011 fast not 2007, and Johnston was wrong in concluding the fast could be skipped. Defendant Linn agreed with the rejection of plaintiff's IC.

169. Defendants Johnston and Linn willfully, knowingly, and intentionally condoned, approved, and turned a blind eye to a practice that violated plaintiff's constitutional rights showing callous disregard for plaintiff's health and safety.

170. On 8/10/11, plaintiff filed a second IC regarding the cold bag meals having insufficient nutrition and calories. Plaintiff's IC stated that he had lost 10 lbs in the first couples of weeks of the fast, always tired, nauseated, dizzy spells, had headaches, and muscle aches. (WCI-2011-18203).

171. Defendant Kroll returned plaintiff's complaint directing him to contact defendant Schrubb.

172. On 9/12/11, plaintiff refiled his complaint informing Kroll that Schrubb had already been contacted and his complaint should be heard.

173. Defendant Johnston recommended Plaintiff's IC be dismissed because the Ramadan menu met all requirements set forth in DAi/DOC and RAPC (Religious Practices Advisor Committee).

174. On 10/3/11, defendant Pollard dismissed plaintiff's IC without any investigation or inquiry.

175. On 10/10/11, plaintiff appealed the dismissal of his IC stating the bag meals contained far less calories than nonfasting inmates, he lost 17 lbs, was tired all the tie, had dizziness, head aches and muscle aches.

176. Defendant Facktor recommended plaintiff's complaint be dismissed because the DAI/DOC and RPAC requirements were met. Defendant Cole dismissed plaintiff's complaint based upon Facktor's recommendation. (WCI-2011-18203).

177. Defendants Kroll, Johnston, Pollard, Facktor, and Cole knowingly, willfully, and intentionally disregarded plaintiff's health and safety by condoning, not intervening, and turning a blind eye to the violation of plaintiff's constitutional rights by continuing a policy that violated plaintiff's constitutional rights.

178. Plaintiff was served the cold bag meals for the entire month of Ramadan from 7/31/11 until 8/30/11, suffering

stomach and intestine cramps, diarrhea, constipation, painful bloody stools, weight loss, vomiting, fatigued, and nausea.

179. Plaintiff's stomach and intestine pain continued for 6-7 months. Plaintiff was prescribed several medicines to help with his digestive system, and severe pain caused by the cold Ramadan bags.

180. Plaintiff informed all the defendants that the cold bag meals are prepared a day in advance and placed in a cooler overnight than given to fasting Muslims to eat with no means of heating up the food.

181. Despite being aware, all of the defendant's ignored plaintiff's cries for assistance and allowed plaintiff to suffer extensive pain and suffering.

## VI. VIOLATIONS OF LAW

182. Plaintiff re-alleges and incorporates the information in paragraphs 1-181 herein against all defendants.

183. The actions of defendants Hautamaki, Thurmer, Muraski, Beth Lind, and Kroll, after plaintiff made them  aware of pain and suffering caused by unhealthy cold bag meals served during Ramadan fast of 2007, displayed deliberate indifference to plaintiff's health causing serious pain thereby constituting cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution and imposed a substantial burden on plaintiff's religious obligation to fast during Ramadan, as guaranteed under the First Amendment and 42 U.S.C. §2000 cc-1. See (¶3-16).

184. Defendants Murphy, Rose, A.Smith, and Raemisch, after plaintiff made them aware of the pain and suffering caused by the unhealthy cold bag meals in IC and appeal in 2007, displayed deliberate indifference to plaintiff's health under the Eighth Amendment and imposed a substantial burden on plaintiff's religious obligation to fast during Ramadan under 42 U.S.C.S § 2000 cc-1 and First Amendment by allowing the practice to continue from 2007-2011. See (¶15-16).

185. The actions of defendants Hautamaki, Muraski, and Thurmer, after plaintiff made them aware of pain and suffering caused by the unhealthy cold bag meals served during Ramadan fast of 2008, displayed deliberate indifference to plaintiff's health causing serious pain thereby constituting cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution and imposed a substantial burden on on plaintiff's religious obligation to fast during Ramadan by allowing the practice to continue from

2008-2011.

186. The actions of defendants Kroll, Murphy, Schrubb,
A. Smith, Raemisch, Gozinski, and Meisner, after
plaintiff made them aware of pain and suffering
caused by the unhealthy cold bag meals in IC
and appeal in 2008, displayed deliberate indifference
to plaintiff's health under the Eighth Amendment
and imposed a substantial burden on plaintiff's
religious obligation to fast during Ramadan, as
guaranteed under the First Amendment and 42 U.S.C §
2000 CC-1, allowing practice from 2008-2011. (¶15-36).

187. The actions of defendants Thurmer, Hautamaki, Schrubb,
Kroll, Tuckwell, Murphy, and Meisner, after plaintiff
made them aware through letters, IC, and appeal, of
pain and suffering caused by unhealthy cold bag meals
served during Ramadan fast of 2009, displayed
deliberate indifference to plaintiff's health causing
serious pain thereby constituting cruel and unusual
punishment under the Eighth Amendment of the U.S.
Constitution and imposed a substantial burden on
plaintiff's religious obligation to fast during
Ramadan, as guaranteed under the First Amendment
and 42 U.S.C. §2000 CC-1, allowing practice from 2008-2011.
See (¶60-86).

188. The actions of defendants Hautamaki, Tuckwell, and
Meisner, after plaintiff made them aware through
letters of the pain and suffering caused by the
cold bag meals served during Ramadan of 2010,
displayed deliberate indifference to plaintiff's
health causing serious pain thereby constituting
cruel and unusual punishment under the Eighth
Amendment of the U.S. Constitution and imposed a
substantial burden on plaintiff's religious
obligation to fast during Ramadan, as guaranteed
under the First Amendment and 42 U.S.C. §2000 CC-1,
allowing practice from 2010-2011. See (136-146, 154-155).

189. The actions of defendants Johnston, Meisner, Rose,
and Lundquist, after plaintiff made them aware
through IC and appeal of the pain and suffering
caused by the cold bag meals served during Ramadan
of 2010, displayed deliberate indifference to
plaintiff's health causing serious pain thereby
constituting cruel and unusual punishment under the
Eighth Amendment of the U.S. Constitution and
imposed a substantial burden on plaintiff's
religious obligation to fast during Ramadan, as
guaranteed under the First Amendment and 42 U.S.C.
§2000 CC- by allowing the practice to continue
from 2010-2011. See (¶147-155).

190. The actions of defendants Schrubb and Tuckwell, after
plaintiff made them aware through letters of the
pain and suffering caused by unhealthy cold bag meals

served during Ramadan of 2011, displayed deliberate indifference to plaintiff's health causing serious pain thereby constituting cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution and imposed a substantial burden on plaintiff's religious obligation to fast during Ramadan, as guaranteed under the First Amendment and 42 U.S.C. § 2000 CC-1. See (156-165, 178-181).

191. The actions of defendants Johnston, Steven Linn, Kroll, Pollard, Factor, and Cole, after plaintiff made them aware through IC and appeal of the pain and suffering caused by the unhealthy cold bag meals served during Ramadan of 2011, displayed deliberate indifference to plaintiff's health causing serious pain thereby constituting cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution and imposed a substantial burden on plaintiff's religious obligation to fast during Ramadan, as guaranteed under the First Amendment and 42 U.S.C. §2000 CC-1.

192. The actions of defendants Hautamaki, Paliekara, and Thurmer substantially burden plaintiff's religion by denying his request to have halal meat and traditional Islamic foods served at Eid-Ul-Fitr of 2008, after plaintiff informed them that it is a great blessing in Islam to practice the actions of the Prophet Muhammad, thereby violating plaintiff's First Amendment right guaranteed under the U.S. Constitution, and 42 U.S.C §2000 CC-1, allowing such practice to continue from 2008-2011. (See (¶30-340.

193. The actions of defendants Murphy and Thurmer substantially burden plaintiff's religious practice of having halal meat and other traditional Islamic foods served at Eid-Ul-Fitr, after plaintiff made defendants aware in IC and appeal that he would receive blessings following the traditions (suna) of the Prophet Muhammad, thereby violating plaintiff's First Amendment right and 42 U.S.C § 2000 CC-1. see (¶34-350).

194. The actions of defendants Murphy, Gozinske, A. Smith, and Reamisch, after being informed by plaintiff through IC and appeal of pain and suffering caused by halal diet and nurse removing him from the diet as a result, substantially burdened plaintiff's religious practice preventing him from observing Islamic dietary obligation, violating plaintiff's First Amendment right and 42 U S.C. § 2000 CC-1, allowing unhealthy halal diet to continue from 2008-2011. See (¶ 37-48).

195. The actions of defendants Paliekara, Beyah, Nurdeen, and Hautamaki, after plaintiff demonstrated that halal diet was contrary to Islam when he filed a request for new religious practice, substantially burdened

plaintiff's religious practice by preventing him from
observing Islamic dietary obligation, violating
plaintiff's First Amendment right and 42 U.S.C
§ 2000 CC-1, allowing the arbitrary practice to
continue from 2008-2011. See (¶49-57).

196. The actions of defendants Lunquist, Thurmer, Murphy,
Gozinske, A. Smith, and Reamisch, after plaintiff
inform them in new religious practice request form,
IC, and appeal that halal diet was contrary to Islam,
substantially burden plaintiff's religious practice
by preventing him from observing Islamic dietary
obligation, violating plaintiff's First Amendment
right and 42 U.S.C. § 2000 CC-1, allowing practice to
continue from 2008-2011. See (¶49-59).

197. The actions of defendants Thurmer and Tuckwell
substantially burdened plaintiff's religious practice
 by denying his request to have halal meat and
traditional Islamic foods served at Eid-Ul-Fitr of
2009, after plaintiff informed them that it is a great
blessing in Islam to practice the actions of the
Prophet Muhammad, thereby violating plaintiff's First
Amendment right guaranteed under the U.S. Constitution
, and 42 U.S.C. § 2000 CC-1, allowing such practice
to continue from 2009-2011. See (¶87-91).

198. Defendants Kroll, Meisner, Gozinske, and Ozanne
substantially burdened plaintiff's religious practice
of having halal meat and other traditional Islamic
foods served at Eid-Ul-Fitr of 2009, after plaintiff
made defendants aware in IC and appeal that he would
receive blessings following the traditions (sunna)
of the Prophet Muhammad, thereby violating plaintiff's
First Amendment right and 42 U.S.C. § 2000 CC-1,
allowing such pratice to continue from 2009-2011.
See (¶87-93).

199 The actions of defendants Paliekara, Hautamaki,
Nurdeen, Kroll, Murphy, Meisner, Ozanne, and, Rose
substantially burdened plaintiff's religious practice
by having plaintiff fast on forbidden day and
scheduling Eid-Ul-Fitr on prohibited day according
to Islamic practice, after plaintiff had informed them
in personal visit, letters, IC, and appeal that
defendants date of last day of Ramadan fast and Eid-
Ul-Fitr were incorrect and prohibited under Islamic
practice, thereby violating plaintiff's First
Amendment right guaranteed by the U.S. Constitution
and 42 U.S.C. § 2000 CC-1, preventing plaintiff from
celebrating 2009 fast of Ramadan and Eid feast.
See (¶94-106).

200. The actions of defendants Kroll, Murphy, Thurmer,
Gozinske, and Ozanne, substantially burdened

27

plaintiff's religious practice by prohibiting Muslim
inmates from having Jumu'ah, Ta'alim, or any group
discussion on Islam without an outside volunteer
as required by DAI and WCI policy. The defendants
continued the DAI and WCI policy after plaintiff
informed them that several Jumu'ah services were
canceled, there had not been a Ta'alim in years
and Muslim inmates were being barred from having
any group discussion on Islam, thereby violating
plaintiff's First Amendment right under the U.S.
Constitution and 42 U.S.C. §2000 CC-1, allowing
such practice to continue from 2010-2012.

201. The actions of defendants Kroll, Meisner, and
Gozinske, after plaintiff made them aware of
unhealthy and unsafe conditions of the cell water
in IC and appeal, displayed deliberate indifference
to plaintiff's health and safety, thereby violating
plaintiff's Eighth Amendment right of the U.S.
Constitution.

## A. EIGHTH AMENDMENT CLAIMS

The Eighth Amendment's prohibition on "cruel and unusual
punishment" establishes the minimum standard for the treat-
ment of prisoners by prison officials. "Cruel and unusual
punishment" is demonstrated by the "unnecessary and wanton
infliction of pain," including pain that is inflicted
"totally without penological justification." Hope V. Pelzer,
536 U.S. 730, 737, 122 S.Ct. 2508, 153 L. Ed. 2d 666 (2001).
Although this is the general standard that applies to all
types of Eighth Amendment claims, it is applied differently
depending on the claim involved . For claims involving
the adequacy of medical care and general conditions of
confinement, the question is whether petitioner suffered
from a serious medical need, to which prison officials
were deliberately indifferent. Estelle V. Gamble, 429
U.S. 97, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976). For claims
involving conditions of confinement, the question is
whether the petitioner has been denied the "minimal
civilized measure of life's necessities" and that prison
officials did so with a culpable state of mind. Rhodes V.
Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69  L. Ed. 2d
59 (1981); Farmer V. Brennan, 511 U.S. 847, 114 S.Ct. 1970,
128 L. Ed. 2d 811 (1994).

Here, plaintiff presented facts that defendants were
deliberately indifferent to plaintiff's serious medical
issues the cold and unhealthy Ramadan bags caused him by
serving plaintiff the bag meals knowing he would suffer
extended pain and suffering as a result. Likewise, plaintiff
presented facts that defendants, with a culpable state
of mind, denied plaintiff the "minimal civilized measure

of life's necessities" when they refused to serve plaintiff
a warm and healthy meal during the Ramadan fast to prevent
what they knew would be pain and suffering for the
plaintiff. See Couch V. Jabe, 479 F.Supp.2d 569, 588-89
(W.D. Va. 2006) (plaintiff does not allege that consumption
of cold food during lockdown and Ramadan fast was harmful to
his health, nonetheless, genuine issue of fact existed
on question of whether defendants provided plaintiff with
adequate nutrition and calories during Ramadan fast), also
Cambell V. Caluthron, 623 F.2d 503 (1980) (two sweet rolls
and coffee for breakfast, and frozen t.v. dinner for noon
and evening meals were calorically and nutritionally
inadequate).

Here, plaintiff alleged facts showing the serious
medical issues he suffered from cold and unhealthy Ramadan
bag meals, and that they were nutritionally inadequate.

## B. FIRST AMENDMENT AND RLUIPA CLAIMS.

It is clear that the government is prohibited from imposing
a "substantial burden on the religious exercise" of an
inmate unless the government demonstrates the burden is:
(1) in furtherance of a compelling government interest, and
(2) the least restrictive means of furthering that interest.
See 42 U.S.C. § 2000cc-1(a). In litigating a RLUIPA claim,
the plaintiff bears the burden of establishing that the
government has imposed a substantial burden on his or her
religious exercise. See 42 U.S.C. § 2000cc-2(b). Under the
statue, a "religious exercise" is "any exercise of religion,
whether or not compelled by, or central to, a system of
religious belief." 42 U.S.C § 2000cc-5(7)(A). However, a
religious belief must be sincerely held in order to receive
protection under RLUIPA. See Perez V. Frank , 2009 U.S. Dist.
18241, *5-6, (referring to Cutter V. Wilkinson, 544 U.S. 709,
725 n.13, 125 S.Ct. 2113, 161 L.Ed. 2d 1020 (2005) ("although
RLUIPA bars inquiry into whether a particular belief of
practice if 'central' to a prisoner's religion ... the Act
does nor preclude inquiry into the sincerity of a prisoner's
professed religiosity."). (Quotations in original).

Here, plaintiff alleged facts demonstrating that the
defendants, after he alerted them to the religious practice
and sincere belief in religious significance of practice,
failed to allow halal meat and traditional Islamic foods
to celebrate the Eid-Ul-Fitr, forced Muslim inmates to fast
and held Eid-Ul-Fitr on prohibited days, denied Jumu'ah and
Ta'alim services, failed to change halal diet that violated
plaintiff's faith as Muslim, and failed to change so-called
halal diet even after plaintiff demonstrated it was causing
him serious medical problems and not nutritionally adequate.

While RLUIPA does not define "substantial burden, the Seventh Circuit has, in the land use context, held that the government imposes a substantial burden on religious exercise  if its actions "necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." Civil Liberties For Urban Believers V. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) "[i]n determining whether an exercise has become 'effectively impracticable,' it is helpful to remember that in the context of the Free Exercise Clause, the Supreme Court held that a government imposes a substantial burden on a person's beliefs when it put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs.'" Koger V. Bryan, 523 F.3d 789, 799 (7th Cir. 2008) (quotations and emphasis in original).

Here, defendants forced plaintiff to modify his religious practice in a way that violated central Islamic belief and practice by violated dietary laws, Eid-Ul-Fitr principles, fasting obligations, prayer, teaching and learning obligations, and causing plaintiff to commit major prohibitions that cause lost of faith (Imani) as a Muslim.

Further, plaintiff demonstrated to defendants that halal diet was not just contrary to Islamic belief, but cause him severe pain and suffering do to the diet being unhealthy and not nutritionally adequate violating the Eighth Amendment as well.

## VII. DAMAGES

A, Award compensatory damages to plaintiff in the following amount:

i. 400,000 jointly and severally against defendants Hautamaki, Thurmer, Muraski, Tuckwell, Schrubb, Meisner, Beth Lind, Kroll, Murphy, Gozinske, A. Smith, Raemisch, Rose, Johnston, Lundquist, Steven Lind, Pollard, Factor, and Cole, for their unlawful acts against plaintiff causing serious physical and emotional distress, pain and suffering, pass pain, loss of the enjoyment of life, permanent bodily injury, and personal humilation for each year plaintiff was made to suffer severe pain due to defendants continued practice of serving plaintiff cold unhealthy Ramadan bag meals.

ii. 200,000 jointly and severally against defendants Hautamaki, Paliekara, Thurmer, Murphy, Beyah, Nurdeen, Lunquist, Meisner, Gozinske, A. Smith, Reamisch, Tuckwell, Kroll, Ozanne, and Rose, for oppression, injury, past pain, mental and psychological anguish, personal humiliation, and depression lived upon the plaintiff by the defendants violation of plaintiff's First Amendment rights under the U.S Constitution and RLUIPA of 2000.

B. Award punitive damages to plaintiff Smith in the following to punish and deter defendants from acting with wanton,

reckless, and callous indifference, ill will and malice in
to plaintiff's rights under the Eighth and First Amendments
of the U.S. Constitution bad the RLUIPA of 2000:

i. $200,000 against defendants Hautamaki, Thurmer, Muraski,
Tuckwell, Schrubb, Meisner, Beth Lind, Kroll, Murphy,
Gozinske, A. Smith, Raemisch, Rose, Johnston, Pollard,
Factor, and Cole, individually.

ii. $100,000 against defendants Paliekara, Beyah, Nurdeen,
Lunquist, and ozanne, individually.

## VIII. CONDITION OF PRECEDENT

All conditions precedent to this lawsuit within the meaning of
Rule 9C of the Federal Rules of Civil Procedure have been
performed or have otherwise occurred.

## IX. PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment awarding plaintiff
compensatory damages in the amount determined just by the
court, awarding plaintiff punitive damages in an amount
determined just by the court against the individually named
defendants, awarding the plaintiff the reasonable costs and
expenses of this action including reasonable attorney's fee
his out of pocket expenses and granting plaintiff such
other and further relief as may be just.

## X. DEMAND FOR JURY TRIAL

The plaintiff demands trial by jury of all issues triable
of right to a jury in this action.


Dated this 1st day of October, 2014.

WALTER SMITH #186894          Submitted By,
STANLEY CORRECTIONAL INST.
100 CORRECTIONS DRIVE                    WALTER SMITH
STANLEY, WI 54768