UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

          Plaintiff,

V.

THERESA MURPHY, MR. CLOVER,
MICHAEL MEISNER, WILLIAM POLLARD,
AND ISMEAL OZANNE,

          Defendants.

FIRST AMENDED COMPLAINT UNDER 42 U.S.C. §1983

    The plaintiff, Walter Smith, (pro se), moves this Court under the civil rights act pursuant to Titles 42 U.S.C. §1983, and 1988 under State and Federal Law.

### I. PLACE OF PRESENT CONFINEMENT:

Stanley Correctional Institution (SCI), 100 COrrections Drive, Stanley, WI 54768.

    A. Is there a grievance procedure at your prison? **Yes.**

    B. Have you filed a grievance concerning the acts relating to your complaint? **Yes**

    C. If you have used the grievance process:

        i. Describe what you did and the result if any:
            **I have exhausted the complete Inmate Complaint Review System at all levels and my complaint was dismissed at every level.**

        ii. Is the grievance process completed? **Yes.**

    D. If you did not use the grievance process, explain why not: **Does not apply.**

### II. PARTIES:

1

PLAINTIFF

A. Plaintiff, Walter Smith, #186894 (Smith) is currently residing at the Stanley Correctional Institution, 100 Corrections Drive, Stanley, WI 54768.

DEFENDANTS

A. Defendant Theresa Murphy (Murphy) is the inmate Complaint Examiner at the Waupun Correctional Institution (WCI), P.O. Box 351, Waupun, WI 53963, and is being sued in her individual and official capacity.

B. Defendant Mr. Clover is the Building and Grounds Superintendent at WCI, P.O. Box 351, Waupun, WI 53963, and is being sued in his individual and official capacity.

C. Defendant Meisner (Meisner) was the Reviewing Authority and Warden at WCI from 2009-2010. He is currently employed at the RedGranite Correctional Institution, P.O. Box 925, Redgranite, WI 54970, and is being sued in his individual and official capacity.

D. Defendant William Pollard was the Warden of WCI in 2011. He currently is employed at the Dodge Correctional Institution, P.O. Box 700, Waupun, WI 53963, and is being sued in his individual and official capacity.

E. Defendant Ismeal Ozanne was the Deputy Secretary for the Department of Corrections in 2010. He is currently employed as a Dane County District Attorney at 215 South Hamilton St., Madison, WI 53703.

### III. PREVIOUS LAWSUITS:

A. Have you begun other lawsuits in state or federal court related to the same facts involved in this action? **No.**

B. Have you begun lawsuits in state or federal court relating to your imprisonment? **Yes.**

C. If your answer is YES to either of the above questions, provide the following requested information.

   1. **Parties to the previous lawsuit**

   Plaintiff(s): Walter Smith

2

    Defendant(s): Sandra Hautamaki, Christine Berndt-Miles, Michael Thurmer, Bruce Muraski, Belinda Shcrubbe, Tim Lindquist, Michael Meisner, Robert Tuckwell, Ronald Beyah, Zakaria Nurdeen, Ismeal Ozanne, William Pollard, and Jon Litscher.

2. Date filed: 10/2/14

3. Court where case filed: United States Western District of Wisconsin.

4. Case Number and citation: Smith V. Lind et al., No. 14-cv-796

5. Basic Claim Made: 1) Smith was served cold and unhealthy bag meals during Ramadan 1st and 8th Amendments, 2) Smith was denied healthy Halal diet 1st & RLUIPA, and Smith was denied Halal meal during Islamic feast 1st Amendment and RLUIPA.

6. Current status: Is still pending

7. If resolved, date of disposition: N/A

8. If resolved, state whether for: N/A

## IV. JURISDICTION:

A. This action is brought pursuant to 42 U.S.C. § 1983, 1988, and the 8th Amendment of the United States Constitution and Safe Drinking Water Act. This Court has jurisdiction based upon 28 U.S.C.§ 1331, and 1343.

B. The amount in controversy exceeds Ten Thousand ($10,000.00) dollars.

## V. STATEMENT OF FACTS:

### A. PLAINTIFF WAS PROVIDED CONTAMINATED WATER AND DENIED ACCESS TO SAFE DRINKING WATER.

1. Plaintiff asserts that while being housed at WCI, he noticed the water coming from the cell sink had a Brown or yellow tint to it, had a salty/tangy taste, and smelled like rotted eggs.

2. Whenever plaintiff would drink the water from the sink in the cell he would experience diarrhea, nausea, stomach aches, hives, headaches, muscle spasms (back), hypertension, fatigue, muscle weakness, lack of focus, mood swings, and vomiting.

3

3. Plaintiff begin to notice that prison staff, correctional officers , and inmates were not drinking the water in the cell halls.

4. In September of 2009, plaintiff observed plumbers and construction workers removing water pipes from the cell hall and inquired why the pipes were removed.

5. The plumbers informed plaintiff that the water pipes were corroded and contaminates water making people sick.

6. On 9/30/09, Smith and other inmates filed a joint grievance (WCI-2010-1610) stating that the water was brown or yellow in color with little black particles, smelled like rotted eggs, tasted salty/tangy like chlorine. (See Exhibit 1, Attached).

7. The grievance also stated the drains were filled with a black oily substance, the plumbers stated the pipes, sinks, and toilets were being changed because the water pipes were corroded and contaminates the water.

8. The grievance stated that the plaintiff observed the pipes were covered in brown and black craters all over the inside of the pipes, and drinking water from the cell hall sink caused diarrhea, nausea, stomach aches, and hives.

9. On 10/16/09, Complaint Examiner Kroll instructed Smith to contact defendant Charles Clover, Superintendent of Building and Grounds.

10. Smith wrote to Clover informing him of the problems with the water listed in the grievance, but Clover never responded.

11. Smith refiled his grievance noting Clover's failure to respond, and on 1/25/09, defendant Murphy recommended the grievance be dismissed after contacting Clover who stated the water at WCI was safe.

12. On 1/25/09, defendant Murphy recommended the IC be dismissed after contacting Clover who informed her that the well water at WCI was tested by a state hygiene lab and met the necessary safety standards set by the Dept. of Natural Resources.

13. Murphy also stated that the hardness of the water causes discoloration in the water, but do not affect the quality of the water or cause ant health hazards. However, Murphy directed Smith to purchase water from canteen, to contact health services in the event he experiences a physical ailment, and stated there was no indication of the water being unsafe of unhealthy.

4

14. Defendant Meisner dismissed plaintiff's grievance, despite the facts and details in Smith's grievance and reports indicating the water at WCI was contaminated.

15. Defendants Murphy Clover, and Meisner knew Smith's grievance was about the pipes and water in the cells being contaminated, not the well water.

16. Defendants Murphy, CLover, and Meisner knew the removed pipes from the cell halls were lead and copper contaminated but failed to alert Smith to the dangers thereof and procedures on how to reduce or avoid risks, and knowing and intentionally covered up high levels of lead and copper in the water.

17. Smith appealed the dismissal of his grievance to defendants Ozanne on 1/29/10, Smith informed Ozanne that he filed a grievance that the water coming from the sinks in the cell halls had discoloration, bad smell, bad taste, caused sickness, and the outside plumber informed him (Smith) that the pipes were being removed because they were corroded.

18. Smith also stated to Ozanne that his grievance was arbitrarily dismissed where Murphy, Clover, and Meisner never informed him of the results of the water tests, the cell hall water he complained of was never tested, and Murphy stating bottled water was available on canteen indicated there was something wrong with the cell hall water and Murphy knew it.

19. Finally, Smith stated to Ozanne that inmates should not be forced to drink the awful tasting, gas smelling, and discolored water which causes problems with his stomach and not safe.

20. Ozanne dismissed Smith's appeal knowing the cell hall water pipes were corroded, Waupun's water tested high for lead and copper, and never took any action to prevent Smith's sickness or direct him on how to avoid exposure to dangerous water contamination.

21. Smith was often dehydrated, weak, and fatigued because he had no alternative water source in the cell hall.

22. During fasting of Ramadan Smith was forced to go days without water where fasting Muslims were not allowed to attend the dinning hall during Ramadan, and Smith would be forced to drink water when dehydration became unbearable.

23. Defendant Pollard was the Warden of W.C.I in 2011 and 2012 and was aware of water contamination, but took no action to prevent, inform, or end Smith's sickness and exposure to danger of water that was high in levels of lead and copper.

## VI. VIOLATIONS OF LAW

24. Plaintiff re-alleges and incorporates the information in paragraphs 1-23 herein against all defendants.

25. The actions of defendants Clover, Murphy, Meisner, and Ozanne, after plaintiff made them aware of unhealthy and unsafe conditions of the cell water in grievance and appeal, knowingly and intentionally covered up dangerous water to plaintiff's health and safety also denying him access to safe water, displayed deliberate indifference to plaintiff's health and safety thereby violating plaintiff's Eighth Amendment right of the U.S. Constitution and any other Amendment or acts.

### EIGHTH AMENDMENT CLAIM

The Eighth Amendment requires the government to "provide human conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" Farmer V. Brennan, 511 U.S. 825,832 (1994) (qouting Hudson V. Palmer, 468 U.S. 517, 526-27 (1984)). Conditions of confinement that expose a prisoner to a substantial risk of serious harm are unconstitutional. Rhodes V. Chapman, 452 U.S. 337,347 (1981).

To demonstrate that prison conditions violated the Eighth Amendment, a plaintiff must allege facts that satisfy a test involving both an objective and subjectice component. Farmer, 511 U.S. at 834. The objective analysis focuses on whether prison conditions were sufficiently serious to that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," id., or exceeded contemporary bounds of decency of a mature, civilized society." Lunford V. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994). The subjective component requires an allegation that prison officials acted wantonly and with deliberate indifference to a risk of serious harm to plaintiff. Id. "Deliberate indifference to a risk of serious harm to plaintiff. Id. Deliberate indifference" means that the defendant knew that the plaintiff faced a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable measures to address it. Farmer, 511 U.S. at 847.

Smith presents facts from which it can be inferred that the defendants knew of contaminated cell hall pipes and water and, with culpable state of mind, denied plaintiff the "minimal civilized measure of life's necessities" when they failed to take any measures to notify, prevent, or protect plaintiff from affects of correded water pipes and water laced with high levels of copper and lead.

### VII. DAMAGES

Award compensatory damages to plaintiff in the following amount:

6

i. 400,000 jointly and severally against defendants Murphy, Clover, Meisner, Pollard, and Ozanne for their unlawful acts against plaintiff causing serious physical and emotional distress, pain and suffering pass pain, loss of the enjoyment of life, permanent bodily injury, and personal humiliation from 2009-2012, where plaintiff was exposed to contaminated water and denied clean drinking water.

B. Award punitive damages to plaintiff Smith in the following to punish and deter defendants from acting with wanton, reckless, and callous indifference, ill will and malice to plaintiff's rights under the Eighth Amendment.

## VIII. CONDITION OF PRECEDENT

All conditions precedent to this lawsuit within the meaning of Rule 9C of the Federal Rules of Civil procedure have have been performed or have otherwise occurred.

## IX. PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment awarding plaintiff compensatory damages in the amount determined just by the court, awarding plaintiff punitive damages in an amount determined just by the court against the individually named defendants, awarding the plaintiff the reasonable costs and expenses of this action including reasonable out of pocket expenses and granting plaintiff such other and further relief as may be just.

## X. DEMAND FOR JURY TRIAL

The plaintiff demands trial by jury of all issues triable of right to a jury in this action.

Submitted By, _____
WALTER SMITH

Dated this 6th day of August, 2018.

WALTER SMITH #186894
STANLEY CORRECTIONAL INST.
100 CORRECTIONS DRIVE
STANLEY, WI 54768